**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                       )
JOHNNY CRUZ, on behalf of himself      )
and all others similarly situated,     )
                                       )
                Plaintiff,             )
                                       )   Civil Action
           v.                          )   No. 19-11425-PBS
                                       )
RAYTHEON COMPANY, KELLY B. LAPIN,      )
in her capacity as Plan                )
Administrator, and                     )
JOHN/JANE DOES 1-10,                   )
                                       )
                Defendants.            )
_____)
```

**MEMORANDUM AND ORDER**

January 17, 2020

Saris, D.J.

**INTRODUCTION**

Plaintiff Johnny Cruz brings this putative class action against Raytheon Company, Kelly B. Lapin, and John/Jane Does 1-10 ("Raytheon"), alleging violations of the Employment Retirement Income Security Act of 1974 ("ERISA"). Cruz argues that Raytheon uses unreasonable "conversion factors" to calculate pension benefits. Plaintiff alleges that he is receiving $57 less per month than he should because Raytheon's "conversion factor" is based upon an unreasonable interest (or discount) rate and mortality table.

1

Raytheon moved to dismiss the complaint for failure to state a claim. Though Cruz has challenged five different pension plans operated by Raytheon, both parties agree that the motion to dismiss analysis should focus solely on whether Cruz has sufficiently pled that Raytheon used unlawful actuarial assumptions to calculate Cruz's pension benefits. After hearing, the Court **DENIES** Defendants' motion to dismiss. (Docket No. 13).

### FACTUAL BACKGROUND

The following facts are drawn from the complaint and must be taken as true at this stage. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014).

I. **Johnny Cruz**

Cruz worked for Raytheon for thirty-two years until his retirement in 2015 at age fifty-five. Docket No. 1 ¶ 8. He participates in the Raytheon Company Pension Plan for Hourly Employees ("Hourly Plan") and receives a 50% joint and survivor annuity. Id. ¶ 14. Cruz's wife is the survivor beneficiary of the annuity. Id. Under this joint and survivor annuity, Cruz receives $1,021.33 per month. Id. ¶ 89.

II. **The Hourly Plan**

The Hourly Plan offers Raytheon's hourly employees several types of annuities, including the 50% joint and survivor annuity chosen by Cruz. Id. ¶ 40. The Hourly Plan uses fixed "conversion factors" to convert a participant's single life annuity into

another form of benefit. Id. ¶ 41. Raytheon applies a 0.90 conversion factor to convert a single life annuity into a 50% joint and survivor annuity. Id.

Raytheon does not disclose the mortality rate or interest rate used to produce the Hourly Plan's conversion factors. However, in its 2014 10-K disclosure reporting pension liabilities to the SEC, Raytheon used a 5.06% interest rate and the RP-2014 mortality table to calculate the present value of its obligations under the Hourly Plan. Id. ¶ 78, 82.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion is used to dismiss complaints that do not "state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In evaluating the motion, the Court must accept the factual allegations in the plaintiff's complaint as true, construe reasonable inferences in his favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley, 772 F.3d at 71.

**DISCUSSION**

**I.   Legal Standard**

"ERISA is a comprehensive statutory scheme that governs employee benefit plans. It was enacted in response to growing concerns about 'the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds.'" Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 139 (1st Cir. 2000) (quoting Massachusetts v. Morash, 490 U.S. 107, 115 (1989)). "[T]he congressional intent of [ERISA is to] hold[] employers accountable for the pension benefits they promise to ensure that employees can safely rely on these promises in their retirement planning." Pension Benefit Guar. Corp. v. Ouimet Corp., 711 F.2d 1085, 1092 (1st Cir. 1983).

Pension plans governed by ERISA must offer a single life annuity for unmarried participants, "unless another form of benefit is elected by the participant." 26 C.F.R. § 1.401(a)-20, at A-25. For married participants, the default form of benefit is a joint and survivor annuity. See 29 U.S.C. § 1055(a)-(b).

ERISA requires "actuarial equivalen[ce]" between the amount a participant earns under a joint and survivor annuity and the amount the participant would have earned under a single life annuity. See 26 U.S.C. § 417(b); 29 U.S.C. § 1055(d)(1)(B); see also 26 C.F.R. §§ 1.401(a)-11(b)(2), 1.401(a)-20, at A-16

4

(requiring that a joint and survivor annuity "be at least as valuable as any other optional form of benefit payable under the plan at the same time"). "[M]odes of payment are actuarially equivalent when their present values[1] are equal under a given set of actuarial assumptions." Stephens v. U.S. Airways Grp., Inc., 644 F.3d 437, 440 (D.C. Cir. 2011).

Treasury Department regulations require employers to use "reasonable" actuarial assumptions to determine actuarial equivalence. See, e.g., 26 C.F.R. § 1.401(a)-11(b)(2) (providing, for joint and survivor annuities, that equivalence "be determined[] on the basis of consistently applied reasonable actuarial factors"); id. § 1.411(d)-3(g)(1) (requiring that actuarial present value be "determined using reasonable actuarial assumptions").

In the ERISA context, courts typically regard the reasonableness of actuarial assumptions as "a zone, not a point." Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc., 888 F.3d 696, 706 (4th Cir. 2018) (citing Artistic Carton Co. v. Paper Indus. Union-Mgmt. Pension Fund, 971 F.2d 1346, 1351 (7th Cir. 1992)); see also Combs v. Classic Coal Corp., 931 F.2d 96, 99-100 (D.C. Cir. 1991) (holding, in the context of withdrawal liability, that Congress created a

---

[1] ERISA defines present value as "the value adjusted to reflect anticipated events." 29 U.S.C. § 1002(27).

5

statutory presumption that plan sponsors' actuarial assumptions are reasonable, such that challengers must demonstrate that a disputed assumption is unreasonable); Bd. of Trs., Mich. United Food & Commercial Workers Union v. Eberhard Foods, Inc., 831 F.2d 1258, 1261 (6th Cir. 1987) (requiring actuarial determinations to "fall within the range of reasonableness"). The Court will apply this "range of reasonableness" framework to determine whether the conversion of a single life annuity to another benefit option satisfies ERISA's "actuarial equivalence" standard.

## III. Discussion

Cruz claims that the Hourly Plan violates ERISA's "actuarial equivalence" requirement because it uses unreasonable actuarial assumptions. In support, Cruz points to the actuarial assumptions that Raytheon used in its SEC filings to calculate its financial obligations.[2] Cruz argues that those assumptions -- which Raytheon itself put forth, albeit in a different context

---

[2] Specifically, Cruz argues that using a 5.06% interest rate and the RP-2000 mortality table would result in a monthly payment of $1078.66, which is 2.7% higher than Cruz's current monthly payment. Docket No. 1 ¶¶ 85, 89. Raytheon's 2014 10-K form used a 5.06% interest rate and the RP-2014 mortality table. Id. ¶ 78; Docket No. 15-1 at 41, 111. Raytheon claims that Cruz's use of the RP-2000 mortality table, rather than the RP-2014 table, demonstrates that Cruz is cherry-picking actuarial assumptions. But Cruz alleges that using the RP-2014 table would result in an even higher monthly payment, such that the RP-2000 table is "more conservative." Docket No. 1 ¶ 85 n.27; Docket No. 19 at 7.

-- would produce a higher monthly payment than what Cruz currently receives.

Raytheon responds that these allegations are insufficient because Cruz has not demonstrated that the Hourly Plan's actuarial assumptions are <u>un</u>reasonable; rather, he has shown only that the Hourly Plan did not use a certain set of reasonable assumptions. Raytheon insists that Cruz must show that the actuarial assumptions underlying the Hourly Plan's conversion factor fall outside of a "range of reasonableness."

Cruz cannot directly attack the reasonableness of the Hourly Plan's actuarial assumptions because Raytheon publishes only a fixed conversion factor, rather than the interest rate and mortality table that the Hourly Plan actually uses. This distinguishes Cruz's case from similar cases in which plaintiffs had access to their plan's actuarial assumptions. <u>See, e.g.</u>, <u>Torres v. Am. Airlines</u>, No. 4:18-cv-00983, at 5 (N.D. Tex. Aug. 7, 2019). But Cruz has alleged that the Hourly Plan's conversion factor produces an unreasonable result, based on its divergence from a result produced by actuarial assumptions that Raytheon itself regards as reasonable. This complex actuarial claim cannot be assessed without a more developed record, in which Raytheon discloses the actuarial assumptions it relies upon. Raytheon cannot hide the ball and then complain that the Plaintiff is unable to find it.

Cruz plausibly alleges that the Hourly Plan violates ERISA by relying upon unreasonable actuarial assumptions. See Smith v. U.S. Bancorp, No. 18-cv-3405, 2019 WL 2644204, at *3 (D. Minn. June 27, 2019) (allowing claim where plaintiff alleged that conversion factor was "not in conformity with actuarial equivalence requirements"); Torres, No. 4:18-cv-00983, at 15 (finding plaintiff stated claim by identifying a single alternative actuarial assumption that plan could have used for conversion).

In the alternative, Raytheon argues that the complaint fails to state a claim because ERISA does not require pension plans to update their actuarial assumptions periodically. Docket No. 14 at 13-16; see also McCarthy v. Dun & Bradstreet, Corp., 482 F.3d 184, 206 (2d Cir. 2007). However, assessing the "reasonableness" of actuarial assumptions could plausibly include consideration of the age of those assumptions. Raytheon has not cited case law to the contrary, so its argument must be retired.

## ORDER

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss (Docket No. 13).

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge